UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHERI A.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:19-cv-04202-DML-TWP |
| | ) |
| ANDREW M. SAUL, Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## Order on Complaint for Judicial Review

Plaintiff Sheri A. filed for disability insurance benefits from the Social Security Administration ("SSA") on May 25, 2016, alleging an onset date of May 8, 2015. [Tr. 18; 174.] Her application was initially denied on August 9, 2016 [Tr. 106], and upon reconsideration on September 15, 2016 [Tr. 115]. Administrative Law Judge Timothy Turner (the "ALJ") conducted a hearing on July 16, 2018 [Tr. 40–85], before issuing a decision on September 24, 2018, that concluded that Sheri A. was not disabled [Tr. 15–27]. The Appeals Council denied review on August 19, 2019. [Tr. 1.] On October 14, 2019, Sheri A. timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

# I.
## STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits . . . to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)–(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence,

3

a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Sheri A. was 44 years old when her alleged disability began. [*See* Tr. 174.] She has completed one year of college. [Tr. 190.] She has worked as a facility specialist in the communications industry. *Id.*[2]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Sheri A. was not disabled. [Tr. 27.] Specifically, the ALJ found as follows:

- At Step One, Sheri A. had not engaged in substantial gainful activity[3] since May 8, 2015, the alleged onset date. [Tr. 20–21.] Her employment after that date was an unsuccessful work attempt. *Id.*

- At Step Two, she had a severe impairment—multiple sclerosis. [Tr. 21.]

- At Step Three, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. *Id.*

---

[2] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

4

- After Step Three but before Step Four, Sheri A. had the RFC "to perform sedentary work (20 CFR 404.1567(a)), except occasionally she can climb ramps or stairs, but never climb ladders, ropes, or scaffolds; occasionally she can balance, stoop, kneel, crouch, or crawl; she is limited to performing simple, routine tasks; she is limited to jobs that can be performed while using a hand-held assistive device (*e.g.*, cane or crutch), which is required only for uneven terrain or prolonged ambulation, and the contralateral upper extremity can be used to lift and carry up to the exertional limits." [Tr. 22.]

- At Step Four, considering her RFC and the testimony of the vocational expert ("VE"), Sheri A. could not have performed any of her past relevant work as a service dispatcher and assignment clerk. [Tr. 25–26.]

- At Step Five, considering the VE's testimony and Sheri A.'s age, education, work experience, and RFC, she was capable of other work with jobs existing in significant numbers in the national economy in representative occupations such as an order clerk, document preparer, and final assembler. [Tr. 26–27.]

## III.
### DISCUSSION

Sheri A. argues that the ALJ erred by failing to: (1) account for her symptoms of multiple sclerosis in her RFC, and/or (2) communicate her full limitations to the VE for consideration at Step Five. The two arguments are not distinct assertions of error; the Court will thus address them together.

Sheri A. has been diagnosed with relapsing-remitting multiple sclerosis. [Tr. 477.] Her treating neurologist described the course of the diagnosis as "highly variable and unpredictable." *Id*.

The ALJ assessed a more limited RFC than any medical opinion of record, including the most recent reviewing consultant's assessment from September 2016. [*See* Tr. 100–01.] The ALJ explained that "[c]onsidering the evidence in the light

5

most favorable to the claimant, I retained postural limitations and assigned additional exertional and mental limitations in the residual functional capacity above to account for the claimant's subjective complaints and the combined effects of her symptoms." [Tr. 24.]

As detailed above, the ALJ's RFC assessment limited Sheri A. to unskilled work at the sedentary exertional level with the need to use a cane in certain situations. The ALJ explained that the additional exertional limitations were supported by balance issues demonstrated during a consultative examination in August 2016. *Id.* The ALJ also explained that mental limitations were added because of the cognitive effects of multiple sclerosis. *Id.*

The ALJ explained that further limitations were not supported because "treatment has been essentially routine and/or conservative in nature. Moreover, it appears that such treatment has been relatively effective in controlling relapsing and remitting symptoms in the context of medication compliance." *Id.*

Sheri A. contends that the ALJ ignored evidence of the progression of her multiple sclerosis, that he lacked the medical expertise to interpret the objective evidence, and that he failed to demonstrate that the evidence was inconsistent with her reported symptoms. [Filing No. 12 at 11–13.] She also contends that the ALJ minimized her treatment, as well as her many necessary medications, while he overstated her positive response to both. *Id.* at 13–14.

Sheri A. asserts that the ALJ failed to assess limitations supported by the record, including necessary absences from work. *Id.* at 15. More specifically, she

6

argues it was "troubling" that the ALJ did not address the need for manipulative limitations despite the record showing that "numb fingers" were a "persistent issue" for her. *Id*. at 16. She contends that the issue is critical to the disposition of her claim because most unskilled, sedentary exertional jobs—including the representative occupations relied upon by the ALJ at Step Five—require bilateral manual dexterity. *Id*.

Sheri A.'s latter point is well taken. The SSA's guidance explains:

**Manipulative limitations:** Most unskilled sedentary jobs require good use of both hands and the fingers; *i.e.*, bilateral manual dexterity. Fine movements of small objects require use of the fingers; *e.g.*, to pick or pinch. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions.

Any *significant* manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base. For example, example 1 in section 201.00(h) of appendix 2, describes an individual who has an impairment that prevents the performance of any sedentary occupations that require bilateral manual dexterity (*i.e.*, "limits the individual to sedentary jobs which do not require bilateral manual dexterity"). When the limitation is less significant, especially if the limitation is in the non-dominant hand, it may be useful to consult a vocational resource.

Social Security Ruling ("SSR") 96-9p (S.S.A. July 2, 1996), 1996 WL 374185, at *8 (emphasis in original). More generally, the Seventh Circuit has repeatedly held that an ALJ cannot ignore significant evidence that is contrary to the determination. *See, e.g., Terry v. Astrue,* 580 F.3d 471, 477 (7th Cir. 2009).

The ALJ summarized the relevant evidence, including the frequent MRIs that were taken to monitor Sheri A.'s multiple sclerosis, as well as the treatment she received to stabilize her symptoms. [Tr. 23.] The ALJ's summary concluded:

7

> A December 2017 MRI of the brain showed some progression in non-enhancing lesions, but findings were otherwise stable. Also[,] in December 2017, the claimant reported improvement with Lemtrada. The following year, March 2018, some symptom exacerbation (*i.e.*, bladder spasticity) was reported in the context of increased life stressors associated with caring for her mother and a brief lapse in insurance.

*Id*.

However, the ALJ's summary ignored conflicting evidence at the end of the record. On May 2, 2018, Sheri A.'s treating neurologist referenced "[n]ew [right upper extremity] numbness within the last year." [Tr. 477.] The specialist's examination found decreased sensation to light touch in the right upper and lower extremity—with the finding in the former extremity noted to be "new." [Tr. 478.] The ALJ acknowledged that the record showed that Sheri A. "sometimes require[d] assistance with dressing and/or hair care [because of] hand numbness." [Tr. 22–23.] But the ALJ did not acknowledge the objective support for those allegations involving Sheri's A.'s dominant hand. [*See* Tr. 52.]

The Commissioner contends that manipulative limitations were not demonstrated because "[a]lthough [Sheri A.'s] treatment providers occasionally found diminished sensation in [her] legs, no such abnormalities were found in her hands. And in her consultative examination, she was found to maintain normal manipulative abilities." [Filing No. 13 at 28.] The consultive examination to which the Commissioner refers was done in 2016; his argument ignores the 2018 medical record.

8

The ALJ also ignored that Sheri A.'s neurologist prescribed a "high risk" medication. [Tr. 477.] Following Lemtrada infusion therapy[4], Sheri A. reported breaking out in hives, having flu-like symptoms including body aches, being fatigued, and that she "could not walk for about a week. She was back to baseline at 3 weeks." [Tr. 473.] Her "daily symptoms" at baseline included "fatigue, numbness in toes and fingertips, urinary retention/spasticity, vision loss bilaterally, [and] balance difficulties." *Id.* Sheri A. reported needing to get additional assistance caring for her mother around the time of her next scheduled round of Lemtrada infusions. *Id.* SSR 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *9, explains that "[p]ersistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications . . . may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." Sheri A.'s need for high risk medication, the prescribing decision, and her willingness to endure significant side effects support her claim.

Accordingly, further evaluation of Sheri A.'s RFC—consistent with the considerations above—is necessary on remand.

---

[4] Lemtrada is a name brand for an "[a]lemtuzumab injection [that] is used to treat the relapsing forms of multiple sclerosis (MS), including relapsing-remitting disease and active secondary progressive disease. This medicine will not cure MS, but it may slow some of the disabling effects and decrease the number of relapses of the disease. It should be used only when 2 or more other medicines to treat MS did not work well. This medicine is available only under a restricted distribution program called the Lemtrada® REMS (Risk Evaluation and Mitigation Strategy) Program." Mayo Clinic, https://www.mayoclinic.org/drugs-supplements/alemtuzumab-intravenous-route/description/drg-20067440 (last visited March 4, 2021).

9

## IV.
### CONCLUSION

For the reasons detailed above, the Court **REVERSES** the ALJ's decision denying Sheri A. benefits and **REMANDS** this matter for further proceedings according to 42 U.S.C.§ 405(g) (sentence 4) as detailed above. Final Judgment will issue accordingly.

Date: 3/12/2021

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

Lindsay Beyer Payne
SOCIAL SECURITY ADMINISTRATION
lindsay.payne@ssa.gov

Annette Lee Rutkowski
LAW OFFICE OF ANNETTE RUTKOWSKI LLC
Annetter@AnnetteAtty.com

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov